**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| MARÍA ALEJANDRA GONZÁLEZ-CARPIO, | |
| **Plaintiff,** | |
| **v.** | **Civil No.** 23-1256 (FAB) |
| BRACHA & SUCCESS ENTERPRISE LLC, *et al.*, | |
| **Defendants.** | |

**OPINION AND ORDER**

BESOSA, Senior District Judge.

On June 11, 2025, after a three-day trial, a jury returned a verdict in favor of plaintiff María Alejandra González-Carpio ("plaintiff") and against defendants Bracha & Success Enterprise LLC, Infinite Success LLC, AA Cosmetics LLC, and Ariel Cosmetics, Inc. (collectively, "defendants"). (Docket No. 194; Docket No. 199.) Before the Court are various post-trial motions submitted by each party. Defendants seek judgment as a matter of law in their favor notwithstanding the jury verdict. (Docket No. 224.) Alternatively, defendants request a new trial. (Docket No. 222.) Should the Court deny either of these requests, defendants request that the Court to strike down the jury's award of punitive damages. (Docket No. 220.) Plaintiff seeks (1) allocation of the damages award between her Title VII claim and Puerto Rico law claims to maximize her recovery,

Civil No. 23-1256 (FAB)                                                    2

(2) reinstatement or, in the alternative, front pay, and
(3) addition of prejudgment interest to her damages award.  See
Docket No. 206 (post-verdict requests); Docket No. 210 (motion to
amend judgment).

For the following reasons, defendants' motions for judgment
as a matter of law, new trial, and their request to strike the
punitive damages award are **DENIED**.  Plaintiff's post-verdict
requests are **GRANTED IN PART** and **DENIED IN PART.**

## I.  Background[1]

Defendants are a collection of associated companies that
operate outlets for services in the beauty industry in the San
Juan metro area.  Defendants initially hired plaintiff in March
2021 to work as a receptionist at defendants' Reserva Life outlet
in Plaza Las Americas.  (Docket No. 203 at 33:6-16; 35:17-22.)
This was a full-time, 40-hour-per-week position paying $10 per
hour.  Id. at 33:17-20.  Shortly after starting, plaintiff began
working as a secretary and receptionist at Orogold as well, another
outlet operated by the defendants in Plaza Las Americas.  Id.
at 35:17-22.  She was next moved to work in the telesales office,
where she earned commissions in addition to her hourly salary.
Id. at 37:14-17.  In July 2021, after working in telesales for one

---

[1] The facts are set forth in the light most favorable to the verdict.  See
Rodríguez-Torres v. Caribbean Forms Mfr., Inc., 399 F.3d 52, 56 (1st Cir. 2005).

month, she was reassigned to work as an "open wallet" floor salesperson at defendant's Forever Flawless outlet in the Mall of San Juan.  Id. at 38:7-25.  The open wallet role earned her $12 per hour and a five percent commission.  Id. at 39:1-10.  In August 2021, she was moved back to Orogold, still in the role of open wallet, and with a raise to $14 per hour plus commissions.  Id. at 39:11-40:2.

At the end of October 2021, plaintiff learned that she was pregnant and informed defendants.  Id. at 41:1-11; 42:4-9.  Without having requested anything, defendants provided her with a "reasonable accommodation" by moving her back to Forever Flawless in January 2022.  Id. at 40:2-16.  Defendants also changed her role to storekeeper, earning the same hourly wage but not commissions, and worked less hours.  Id. at 43:10-19.  In May 2022, as her due date approached, plaintiff was twice asked by Adhir Bochris (who works in management at the defendant companies) when she would commence her maternity leave.  Id. at 44:9-15.

In May 20, 2022, one week after Mr. Bochris asked her for a second time, plaintiff was terminated.  Id. at 44:19-24.  She was eight months' pregnant.  Id. at 44:16-18.  The day before her termination, Ángel Rosa of human resources asked her to stop by the main office for a meeting.  Id. at 45:5-8; 46:10-11.  At the meeting, Mr. Rosa gave her a memorandum which accused her of

violating defendants' non-compete policy.   Id. at 45:9-19.
Plaintiff had a side business where she provided beauty services
to a small number of customers – four neighbors, two friends, and
her grandmother.  Id. at 49:14-22; 51:23-52:4.  She earned a total
of 180 dollars from her side business.  Id. at 52:15-16.   The
services she provided - pedicures, manicures, brow lamination, and
eyelash lifts – were not provided by defendants, and none of her
customers was also a customer of the defendants.  Id. at 50:9-17;
52:2-4; Docket No. 204 at 165:2-166:7.  She therefore challenged
Mr. Rosa's assertion that she was violating the non-compete
agreement; Mr. Rosa ultimately agreed with her, but told her that
the defendant companies would still be terminating her.  (Docket
No. 203 at 46:1-5.)  Later that day, while working her shift, she
received a termination letter via WhatsApp stating that she was
being terminated "after several audits."  Id. at 46:6-9; 48:20-
22; see also Trial Exhibit 3.

Plaintiff's termination caused her considerable hardship.
Her job had provided her financial stability, with a good hourly
salary and substantial commissions.  Id. at 55:14-24.  She could
not understand what she had done to deserve termination.  Id.
at 56:10-14.  She had received two admonitions while working for
defendants, one for a clerical error and another for a dress code
violation, but both had occurred early in her tenure.  Id. at 34:2-

37:8.  For their part, the defendants claimed that she had not performed well at her jobs, and that her side business violated her non-compete obligations.  See Docket No. 204 at 185:24-188:2; 190:15-191:22.  Defendants also alleged that plaintiff breached her employee confidentiality agreement by failing to return a notebook containing client names and phone numbers after she was terminated.  Id. at 91:13-93:12; 97:7-98:5.  Plaintiff, however, claimed that defendants never asked her to return the notebook, and that she never utilized the information in it for herself. Id.

On May 19, 2023, Plaintiff sued defendants, claiming that her termination was the result of gender and pregnancy-based discrimination.  See Docket No. 1 (complaint).  She alleged that defendants violated Title VII of the Civil Rights Act of 1968, 42 U.S.C. sections 2000-e, et seq. ("Title VII"), the Pregnancy Discrimination Act of 1978, 42 U.S.C. section 2000-e(K), Puerto Rico Laws Ann. tit. 29, sections 146-151 ("Law 100"), Puerto Rico Laws Ann. tit. 29, sections 1321-1341 ("Law 69"), Puerto Rico Laws Ann. tit. 29, sections 467-474 ("Law 3"), Puerto Rico Laws Ann. tit. 29, sections 185a-185m ("Law 80"), and Article II, Section I

of the Puerto Rico Constitution.[2]  On June 11, 2025, after a three-day trial, the jury found for plaintiff on all her claims.  See Docket No. 199.  The jury awarded her $65,000 in back pay, $0 in "[c]ompensatory damages other than Back Pay," and $650,000 in punitive damages.  Id.

## II.  Discussion

### A.  Defendant's Request for Judgment as a Matter of Law

The Court will start with defendants' motions, which if granted would moot plaintiff's requests.  At trial, the Court denied defendants' motion for judgment as a matter of law raised after plaintiff rested her case.  See Docket 204 at 107:10-125:23. In their renewed motion, defendants present two arguments for why they should prevail.  (Docket No. 224.)  First, they claim that plaintiff failed to demonstrate that she performed well as an employee.  Id. at p. 3.  Second, they claim that she failed to establish a *prima facie* case of discrimination because she did not show that she was replaced with someone who was not pregnant.  Id.

"A party seeking to overturn a jury verdict faces an uphill battle, [and] review is weighted toward preservation of the jury verdict."  Monteagudo v. Asociación de Empleados del Estado

---

[2] Prior to trial, the Court granted summary judgment to defendants on plaintiff's retaliation claims under Title VII.  See Docket No. 127, González-Carpio v. Bracha, Civil No. 23-1256, 2025 U.S. Dist. LEXIS 9596, at *18 (D.P.R. Jan. 17, 2025) (Besosa, J.)

Libre Asociado, 554 F.3d 164, 170 (1st Cir. 2009) (internal quotation omitted).  "Courts may only grant a judgment contravening a jury's determination when the evidence points so strongly and overwhelmingly in favor of the moving party that no reasonable jury could have returned a verdict adverse to that party."  Id. (quoting Rivera v. Turabo Med. Ctr. P'ship, 415 F.3d 162, 167 (1st Cir. 2005)).  "[T]he court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."  Talavera-Ibarrondo v. Mun. of San Sebastián, 887 F. Supp. 2d 419, 424-25 (D.P.R. 2012) (Besosa, J.) (quoting Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 151 (2000)).

        Defendants fail to convince the Court that the jury verdict should be overturned.  With respect to their first argument, plaintiff presented evidence that a reasonable jury could have interpreted as demonstrating her good performance as an employee.  Plaintiff testified about how she was moved to different positions in the organization, with higher pay and perks like commissions, and that these transfers occurred after she received the admonishments that defendants cite to claim that she performed poorly.  The jury was within its province to determine that defendants did not have any serious issues with her performance

and to infer that they terminated her because of gender discrimination.

Defendants' second argument is similarly unconvincing. Plaintiff does not need to show that she was replaced by someone who was not in the protected class in order for the jury to draw an inference of discrimination. See Sánchez v. Puerto Rico Oil Co., 37 F.3d 712, 720 (1st Cir. 1994) ("[W]hen, as now, an employment discrimination action has been submitted to a jury, the burden-shifting framework has fulfilled its function, and backtracking serves no useful purpose. To focus on the existence of a *prima facie* case after a discrimination case has been fully tried on the merits is to unnecessarily evade the ultimate question of discrimination vel non.") (internal quotation and alterations omitted). Plaintiff testified that she was terminated when she was eight months' pregnant and that defendants knew she was pregnant. Although defendants presented non-discriminatory explanations for their decision to terminate her – two work-related admonishments, violation of the non-compete agreement, and violation of the confidentiality agreement – she presented evidence rebutting each of these explanations. The admonishments occurred early in her tenure and she received promotions after they were given, suggesting that defendants did not consider them serious enough to merit termination. Her side business which

allegedly violated the non-compete agreement did not provide the
same services that defendants provided, and was very small-scale,
which suggests that defendants' citation of this reason was
pretextual.   And   as   for   the   alleged   violation   of   the
confidentiality agreement, this occurred after she was terminated.
Based on timing alone, it cannot explain her termination.   From
this evidence, a reasonable jury could conclude that the most
likely reason for her termination was pregnancy discrimination.

       Accordingly, defendants' renewed motion for judgment as
a matter of law is **DENIED.**   (Docket No. 224.)

       **B.    Defendant's Request for a New Trial**

              In the alternative to judgment in their favor as a matter
of law, defendants request a new trial.   (Docket No. 222.)   They
argue that a new trial must be held because (1) the verdict
conflicts   with   the   clear   weight   of   the   evidence,   and
(2) plaintiff's counsel made improper remarks during his closing
statements.   Neither argument convinces the Court that a new trial
is warranted.

              Federal Rule of Civil Procedure 59(a) permits a court to
grant a new trial on some or all of the issues "after a jury trial,
for any reason for which a new trial has heretofore been granted
in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A).
"A motion for a new trial is addressed to the sound discretion of

the trial court." Ojeda-Rodríguez v. Zayas, 666 F. Supp. 2d 240, 258 (D.P.R. 2009) (Besosa, J.) (citing Ríos v. Empresas Líneas Marítimas Argentinas, 575 F.2d 986, 990 (1st Cir. 1978)). "A district court should only grant [a motion for new trial] if the outcome is against the clear weight of the evidence such that upholding the verdict will result in a miscarriage of justice." Monteagudo, 554 F.3d at 174 (citing Rivera, 415 F.3d at 171).

With respect to defendants' weight of the evidence argument, "when an argument that the evidence was insufficient forms the basis of a motion for new trial, the district court is generally well within the bounds of its discretion in denying the motion using the same reasoning as in its denial of a motion for judgment as a matter of law." Talavera-Ibarrondo, 887 F. Supp. 2d at 436 (citing Lama v. Borrás, 16 F.3d 473, 478 (1st Cir. 1994)). As previously discussed, there was ample evidence presented at trial to support the jury's verdict. See supra pp. 8-9. Weighing the evidence and making credibility determinations are tasks left to the jury. Accordingly, the Court rejects defendants' argument that the verdict was against the clear weight of the evidence.

Defendants' second argument is that plaintiff's counsel made improper remarks during his closing statements that prejudiced the jury and corrupted the fairness of the trial. Plaintiff's counsel gave the jury an estimate of the total back

Civil No. 23-1256 (FAB)                                          11

pay she should be awarded ($115,000) and an estimate of her biweekly income prior to her termination ($1,576.65).  See Docket No. 205 at 276:17-21; 277:4-18.  Defense counsel objected and the Court sustained the objection, admonishing plaintiff's counsel not to mention any specific amounts for damages.  Id.  In response, plaintiff's counsel described to the jury a methodology for calculating back pay, as set forth below:

> How you calculate back wage, the salary she earns.  You take what she was making at the time of her termination, which we submit was December 2021 when she was moved from her employment, and you take the time that has elapsed . . . You take what she was making in December 2021 up until now.  Three years has elapsed.  You multiply that by the three years.  Then you deduct.  She said that she had three jobs:  With Studio Luca, Estilo Moderno, and with Willie's Pinchos.  It doesn't have to be exact.  It has to be a fair approximation, not more, not less.  With respect to compensatory damages, the amount is left to your sound discretion.  You will value what she suffered by losing her job.  You will value the impact she suffered in her life.  You will value what she went through.  (Docket No. 205 at 277:20-23; 278:7-17.)[3]

Defense attorney Pérez-Lebrón attempted to raise an objection, but the Court instructed him that only attorney Del Cueto could do so because Mr. Del Cueto had been the attorney responsible for objections to plaintiff's closing arguments up to that point.  Id. at 277:24-278:1.

---

[3] Plaintiff's counsel also discussed how to calculate punitive damages, but defendants did not raise this issue in their motion for a new trial.  See Docket No. 205 at 278:18-25; Docket No. 222 at pp. 7-9.

"In assessing the effect of allegedly improper statements made by counsel during closing arguments, courts examine the totality of the circumstances, including (1) the nature of the comments; (2) their frequency; (3) their possible relevance to the real issues before the jury; (4) the manner in which the parties and the court treated the comments; (5) the strength of the case; and (6) the verdict itself." Granfield v. CSX Transp., Inc., 597 F.3d 474, 490 (1st Cir. 2010). "[I]mproper closing arguments are typically harmless if the judge provides a curative instruction that counsel's argument is not evidence." Portugués-Santana v. Rekomdiv Int'l Inc., 725 F.3d 17, 26 (1st Cir. 2013). A general jury instruction that arguments and statements by attorneys are not evidence may also serve to cure adverse effects from improper statements. Id. at 27.

The Court finds that the allegedly improper statements do not warrant holding a new trial. The dollar estimates of plaintiff's back pay and salary were contemporaneously objected to by defense counsel, and the Court sustained these objections. The jury was reminded in the final jury instructions that "any evidence which [the Court] instructed you to disregard or which [the Court] ordered stricken from the record or as to which an objection was sustained by the [C]ourt, is not evidence and must not be considered by you." (Docket No. 195 at p. 4.) The Court also

reminded the jury that "any statement, objection, or argument made
by the lawyers are not evidence."  Id.  And the fact that the back
pay awarded was considerably less than plaintiff's counsel's
estimate ($65,000 versus $115,000) suggests that the jury did not
rely on the estimate.  Overall, plaintiff's counsel's dollar
estimates of her back pay and salary were harmless.

          As for plaintiff's counsel's subsequent explanation of
how to calculate damages, defense counsel did not properly object
at trial.  After the Court instructed attorney Pérez-Lebrón that
attorney Del Cueto had to be the counsel to object, attorney Del
Cueto remained silent.  Accordingly, this argument has been waived.
See Arrieta-Agressot v. United States, 3 F.3d 525, 528 (1st Cir.
1993) ("[T]he failure to object usually precludes a curative
instruction, a warning about further remarks, or some form of
amelioration.")  Even assuming an objection was properly raised,
these statements did not compromise the fairness of the trial.
They were, in fact, similar to Jury Instruction No. 16, albeit
with additional details from the trial testimony.  Compare supra
p. 11, with Docket No. 195 at p. 22.  None of what plaintiff's
counsel said was factually incorrect or misleading, nor did the
statements rely on or contain evidence that was not presented at
trial.  The Court finds that these statements do not warrant
holding a new trial.

Accordingly, defendants' motion for a new trial is **DENIED**. (Docket No. 222.)

### C.    Defendants' Motion to Strike Punitive Damages Award

Defendants' third motion seeks to strike plaintiff's punitive damages award in its entirety. (Docket No. 220.) The Court rejects this request.

Defendants correctly note that "the law of this circuit is that no punitive damages may be awarded in a Title VII case in the absence of an award of compensatory damages or of nominal damages." Azimi v. Jordan's Meats, Inc., 456 F.3d 228, 237 (1st Cir. 2006). They claim that plaintiff's punitive damages award is impermissible because she did not receive any compensatory damages, pointing to the verdict form providing an award of $0 in "[c]ompensatory damages other than Back Pay." See Docket No. 199. Where defendants' argument fails is in its assertion that plaintiff's $65,000 back pay award does not constitute compensatory damages, when in fact, it does. See Provencher v. CVS Pharm., 145 F.3d 5, 11 (1st Cir. 1998) ("[P]unitive damages are prohibited in the absence of compensatory damages, but the latter include back pay.") That the back pay award constitutes compensatory damages is underscored by the verdict form – "compensatory damages other than Back Pay" implies that back pay is a component of compensatory damages. Accordingly, defendants'

argument is misplaced and their motion to strike the punitive damages award is **DENIED.**  (Docket No. 220.)

### D.  Allocation of Damages

The Court now moves to plaintiff's post-trial requests, the first of which concerns allocation of the damages award between her Title VII and Puerto Rico law causes of action.  In order to maximize her recovery, she requests the Court to allocate her back pay award to her Puerto Rico law causes of action, which contain provisions for double recovery of damages sustained by the employee.  See P.R. Laws Ann. tit. 29, § 146(a)(1); P.R. Laws Ann. tit. 29, § 1341(a)(1); P.R. Laws Ann. tit. 29, § 469(a).  She also requests the punitive damages award be allocated to her Title VII claim.  Acknowledging the statutory cap for recovery of damages under both Title VII and Puerto Rico law, plaintiff concedes that her $650,000 punitive damages award will be reduced to $50,000. See 42 U.S.C. § 1981a(b)(3)(A) (Title VII statutory damages cap for companies with more than 14 and fewer than 101 employees); P.R. Laws Ann. tit. 29, § 123 (Puerto Rico law caps match the Title VII caps); Docket No. 205 at 287:1-8 (plaintiff counsel's admission that defendants "testified in their Rule 30(b)(6) deposition that they considered that these enterprises have around 60 employees.")

"The First Circuit [Court of Appeals] has held that in cases where the jury has failed to apportion the award between

federal and state claims, it is 'proper for the district court to allocate the compensatory portion of the plaintiff's award to the Commonwealth claims so as to preserve as much of the verdict as possible given the Title VII cap.'"  Wirshing v. Banco Santander De P.R., 254 F. Supp. 3d 271, 278 (D.P.R. 2015) (Gelpí, J.) (citing Rodríguez-Torres, 399 F.3d at 66) (internal alterations omitted). "This method allows the court to maximize the plaintiff's recovery while adhering to the Title VII cap."  Id.

       Consistent with the above, the Court will apportion the damages award as follows:  to the Title VII claim, $1.00 in back pay and $650,000 in punitive damages, and to the Puerto Rico law claims, $64,999 in back pay.[4]  The punitive damages award is reduced to $50,000 due to the statutory damages cap, while the back pay award under Puerto Rico law is doubled to $129,998.[5]  Accordingly, plaintiff's award totals $179,999.

---

[4] By allocating $1.00 of plaintiff's back pay award to her Title VII claim, the Court avoids the issue of awarding punitive damages without accompanying compensatory damages.  See Monteagudo, 554 F.3d at 174-77 (upholding district court apportionment of $1.00 in compensatory damages and $300,000 in punitive damages to plaintiff's Title VII claim).

[5] Awards of back pay under Title VII are not subject to the $50,000 statutory cap.  See 42 U.S.C. § 1981a(b)(2).  Although Puerto Rico law does not explicitly provide the same, the Court applies a similar understanding here because Puerto Rico law governing employment claims seeks "to ensure consistency [with federal law] in interpretations regarding similar terms or provisions."  P.R. Laws Ann. tit. 29, § 123a.

### E.    Reinstatement & Front Pay

Plaintiff's next request is that she be reinstated to her former role with defendants or, in the alternative, provided with front pay.  Defendants oppose both requests, arguing that the hostility created by plaintiff's lawsuit and the small size of their companies would create an undue hardship if either remedy were awarded.

"The remedial scheme in Title VII is designed to make a plaintiff who has been the victim of discrimination whole through the use of equitable remedies."  Orr v. Mukasey, 631 F. Supp. 2d 138, 155 (D.P.R. 2009) (Besosa, J.) (citing Selgas v. American Airlines, 104 F.3d 9, 12 (1st Cir. 1997)).  "These remedies (which include reinstatement, back pay, and front pay) are accordingly intended to compensate a plaintiff for the effects of the discrimination, both past and future, and to bring the plaintiff to the position which [she] would have occupied but for the illegal act(s)."  Id. (citing Selgas, 104 F.3d at 12).  The First Circuit Court of Appeals has noted an "overarching preference [] for reinstatement" because it "most efficiently advances the goals of Title VII by making plaintiffs whole while also deterring future discriminatory conduct by employers."  Chungchi Che v. Mass. Bay Transp. Auth., 342 F.3d 31, 43 (1st Cir. 2003).  Special circumstances are needed to render reinstatement inappropriate,

such as "(1) the strength of the evidence []; (2) whether the discharged employee has found comparable work; (3) the absence of a property right in the position because the employee was hired in violation of local law; and (4) the ineligibility of the employee for the position, due to failure to meet established qualifications, which would permit immediate discharge for no reason or for any permissible reason." Velázquez v. Figueroa-Gómez, 996 F.2d 425, 429 (1st Cir. 1993).

The Court finds that reinstatement is an appropriate remedy in this case. The only arguments defendants raise are that their animosity to the plaintiff and the small size of their company render reinstatement a considerable hardship. Both arguments, however, are unconvincing. Although "coworker hostility, *adequately proven real and intolerable*, may [] provide an appropriate ground for refusing reinstatement," that is not what defendants allege here. Quint v. A.E. Staley Mfg. Co., 172 F.3d 1, 21 (1st Cir. 1999) (emphasis in original). All that defendants allege are unsubstantiated tensions related to the trial. This allegation is insufficient. See id. at 21 ("[R]arely could an ADA claimant be reinstated were [] employer antagonism considered an adequate ground for denying reinstatement"); Chungchi Che, 342 F.3d at 43-44 ("[T]here must be evidence in the record aside from an employer's mere participation in the trial to

support a finding of extraordinary antagonism if that is to be the basis for the district court's denial of reinstatement.")  As for defendants' assertion that their small size makes reinstatement highly burdensome, this assertion is undercut by the factual record.  Plaintiff was frequently reassigned to different positions within defendants' organization, serving in several different commercial outlets, suggesting that defendants' organization is both large enough and flexible enough to accommodate her reinstatement.

Accordingly, the Court finds that reinstatement is an appropriate remedy in this case.  Because the Court awards reinstatement, plaintiff's request for front pay will not be considered.[6]

**F.    Prejudgment Interest**

Plaintiff's last request is for the Court to add prejudgment interest to her back pay award.  The Court finds, however, that awarding prejudgment interest is not warranted.

"As a matter of federal law, prejudgment interest is a discretionary item of compensation" and "[t]he question of whether it is necessary to make the plaintiff whole is within the

---

[6] This does not preclude the possibility of the parties negotiating an agreement by which plaintiff would accept a front-pay settlement in lieu of reinstatement.  See Quint, 172 F.3d at 21 n. 19.  If the parties are unable to agree on a new position for plaintiff or on a front pay settlement agreement, plaintiff may petition the Court for a hearing on the issue of front pay.

discretion of the trial court." Conway v. Electro Switch Corp.,
825 F.2d 593, 602 (1st Cir. 1987). But because plaintiff seeks to
have her back pay damages award allocated to her Puerto Rico law
claims rather than her Title VII claim, the question is whether
she should receive prejudgment interest as a matter of Puerto Rico
law, not federal law.

Under Rule 44.3(b) of the Puerto Rico Rules of Civil
Procedure, a plaintiff is entitled to prejudgment interest on a
Puerto Rico civil claim if the defendant acted in an obstinate
manner during the litigation.[7] See P.R. Laws Ann. tit. 32, app.
V, R. 44.3(b). "A finding of obstinacy requires that the court
determine a litigant to have been unreasonably adamant or
stubbornly litigious, beyond the acceptable demands of the
litigation, thereby wasting time and causing the court and the
other litigants unnecessary expense and delay." Vázquez-
Filippetti v. Banco Popular de P.R., 409 F. Supp. 2d 94, 98 (D.P.R.
2006) (Laffitte, J.) (quoting Correa v. Cruisers, A Division of
KCS Int'l, Inc., 298 F.3d 13, 30 (1st Cir. 2002)). "A party shall
be found obstinate if it engages in actions which (a) make

---

[7] The First Circuit Court of Appeals has held that "[i]n a diversity case in
which the substantive law of Puerto Rico supplies the basis of decision, a
federal court must give effect to Rules 44.1(d) and 44.3(b) of the Puerto Rico
Rules of Civil Procedure." Dopp v. Pritzker, 38 F.3d 1239, 1252 (1st Cir.
1994). Rule 44.3(b) applies in this supplemental jurisdiction case because a
"pendent state-law claim proceeds as it would were this a state-law claim
brought in federal court by virtue of diversity jurisdiction." Godin v.
Schencks, 629 F.3d 79, 85 n. 9 (1st Cir. 2010).

Civil No. 23-1256 (FAB)                                                21

necessary litigation which could have been avoided, (b) prolongs
the litigation unnecessarily, or (c) requires the other party to
incur expenses in the pursuit of avoidable tasks." Id. (citing
Top Entm't Corp. v. Torrejón, 349 F. Supp. 2d 248, 251 (D.P.R.
2004) (Pieras, J.))

        Here, plaintiff has not argued that defendants
obstinately litigated the case.  Although plaintiff ultimately
prevailed on her claims, the Court does not consider defendants'
contestation of their liability and decision to see the case
through trial to have been unreasonably adamant or stubbornly
litigious.  Accordingly, defendants were not obstinate, and
plaintiff is not entitled to receive prejudgment interest on her
back pay award.

**III. Conclusion**

    For the reasons stated above, defendants' renewed motion for
judgment as a matter of law, request for a new trial, and request
to strike the punitive damages award are **DENIED**.  (Docket No. 220;
Docket No. 222; Docket No. 224.)  Plaintiff's post-verdict requests
are **GRANTED IN PART** and **DENIED IN PART**.  (Docket No. 206; Docket
No. 210.)  Her damages allocation request is **GRANTED**.  The $650,000
punitive damages award is assigned to the Title VII claim, along
with $1.00 from the back pay award.  The rest of the back pay
award, $64,999, is allocated to the Puerto Rico law claims.  After

Civil No. 23-1256 (FAB)                                                        22

applying the Title VII statutory cap and Puerto Rico law double
damages multiplier, her total award is $179,999.  Her request for
reinstatement is **GRANTED**.  Her request for prejudgment interest on
her damages award is **DENIED**.

       **IT IS SO ORDERED**.

    San Juan, Puerto Rico, December 8, 2025.

                       s/ Francisco A. Besosa
                       FRANCISCO A. BESOSA
                       SENIOR UNITED STATES DISTRICT JUDGE